IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

<table>
<tr><td>LATHAN ROSA,<br><br>       Petitioner,<br><br>  vs.<br><br>UNITED STATES OF AMERICA,<br><br>       Respondent.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>Criminal No. 16-00476 HG-02<br>Civil No. 18-00215 HG-KJM</td></tr>
</table>

**ORDER DENYING PETITIONER LATHAN ROSA'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (ECF NO. 130)**

**and**

**DENYING A CERTIFICATE OF APPEALABILITY**

On June 8, 2018, Petitioner Lathan Rosa filed a Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255.

Petitioner challenges his May 30, 2017 conviction pursuant to a guilty plea for conspiracy to distribute methamphetamine. He claims that his attorney provided ineffective assistance of counsel at two different stages in the proceedings.

First, Petitioner claims he received ineffective assistance concerning his guilty plea before the Magistrate Judge.

Second, Petitioner claims he received ineffective assistance of counsel regarding his right to file an appeal following

1

sentencing.

Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 130) is **DENIED.**

A Certificate of Appealability is **DENIED.**

## BACKGROUND

**The Indictment**

On August 3, 2016, the grand jury returned a three-count Indictment charging Petitioner Lathan Rosa and two co-defendants with crimes related to the distribution and possession with intent to distribute methamphetamine. (ECF No. 10).

Petitioner was charged as follows:

**Count 1: Conspiracy to Distribute Methamphetamine** – From in or around July 1, 2016, to and including July 27, 2016, Lathan Rosa, did willfully and unlawfully conspire to distribute and possess with intent to distribute fifty grams or more of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 21 U.S.C. § 846.

**Count 2: Possession With Intent To Distribute Methamphetamine** – On or about July 22, 2016, Lathan Rosa did knowingly and intentionally attempt to posses with intent to distribute fifty grams or more of methamphetamine, its salts, isomers, and salts of its isomers in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 21 U.S.C. § 846.

(Indictment, ECF No. 10).

**Attorney Rustam A. Barbee's Representation of Petitioner**

On July 25, 2016, the Office of the Federal Public Defender for the District of Hawaii was appointed as counsel for Petitioner Rosa. (ECF No. 4).

On December 15, 2016, Assistant Federal Defender Melinda Yamaga filed a Motion for Withdrawal and Substitution of Counsel. (ECF No. 45).

The Magistrate Judge granted Attorney Yamaga's motion and appointed CJA counsel Rustam A. Barbee ("Attorney Barbee") as Petitioner's counsel on December 22, 2016. (ECF No. 51).

**Petitioner's Guilty Plea**

Attorney Barbee met with Petitioner Rosa multiple times between December 22, 2016 and January 27, 2017. (Decl. Of Rustam Barbee at ¶ 4, ECF No. 137-1). Attorney Barbee explained to Petitioner the risks of going to trial. (Id. at ¶¶ 8-9). Attorney Barbee reviewed the discovery with Petitioner. (Id. at ¶ 9). The discovery revealed that on July 22, 2016, law enforcement intercepted a parcel containing 1,773 grams of 99% pure methamphetamine. (Id. at ¶ 5). Law enforcement made a controlled delivery of the parcel to Petitioner's workplace and Petitioner Rosa was arrested. (Id.) Petitioner made a post-arrest confession. (Id.) Petitioner confessed that he knew the parcel contained "ice" and that he asked his co-conspirator to

receive the parcel on Petitioner's behalf.  (Id.)  Petitioner

also admitted that he sent $20,000 to Las Vegas as partial

payment for the drugs.  (Id.)  Petitioner confessed that a second

parcel containing more drugs was being shipped to him from Las

Vegas.  (Id.)

In his Declaration, Attorney Barbee stated that during his

meetings with Petitioner, he "always found him to be intelligent,

alert and aware of the legal aspects of his case, including the

options between fighting his case at trial, pleading guilty and

pleading guilty while continuing his cooperation with government

in an effort to merit a sentence reduction for providing

substantial assistance to law enforcement."  (Id. at ¶ 9).

Attorney Barbee stated he explained to Petitioner that he

believed Petitioner was facing a sentencing exceeding 27 years

imprisonment (324 to life) if he lost a jury trial; that he would

be facing a sentence of perhaps 20-33 years if he simply pled

guilty; and would be facing a sentence likely to be below 20

years imprisonment if he were to plead guilty, enter into a

written plea agreement, and agree to continue his cooperation

with law enforcement.  (Id.)

In his Declaration, Attorney Barbee stated, "I never told

Mr. Rosa that he would receive a sentence of 10 years."  (Id.)

At the evidentiary hearing, Attorney Barbee explained that he

never told Petitioner "you're looking at 10 years," but rather he

told him that he had a ten year mandatory minimum. (Evidentiary Hearing Transcript at p. 82, ECF No. 148).

Attorney Barbee negotiated a plea agreement with the Government on Petitioner's behalf. Attorney Barbee reviewed the Plea Agreement in detail with Petitioner. Attorney Barbee stated that, "[a]fter reviewing copies of his discovery including reports detailing his own confession, accessing the strength of the government's case against him, discussing his options with me, knowing the projected sentence outcomes and reviewing the written memorandum of plea agreement ("MOPA") including a detailed review and discussion of paragraph 12 of the written plea agreement, wherein Mr. Rosa waived almost all of his appellate rights, Mr. Rosa agreed to enter into the written agreement." (Id. at ¶ 10).

On January 27, 2017, Petitioner Rosa pleaded guilty before the Magistrate Judge to Count 1 of the Indictment pursuant to a Memorandum of Plea Agreement. (ECF No. 77).

Petitioner Rosa admitted to the following facts in his Plea Agreement:

> In July of 2016, Defendant, received from his co-defendant Codi Alcon residing in Henderson, Nevada, two (2) U.S. Postal Service Priority Mail parcels. The two parcels were intercepted in Hawaii on July 22, 2016. Contained in one parcel was 1,870 grams of crystal methamphetamine and in the other parcel 455 grams of crystal methamphetamine. Defendant previously sent to co-defendant Alcon $20,000.00 in U.S. currency as partial payment for the crystal methamphetamine.

5

After receiving the two parcels containing the methamphetamine, Defendant was expected to pay co-defendant Alcon the amount of $30,000.00, the remaining balance of their agreed upon purchase price.

The suspected methamphetamine seized from the two parcels received by Defendant were submitted to the HPD Scientific Investigative Section (SIS) for analysis, which revealed the following: 1) Exhibit 1 was found to be methamphetamine HCl with a weight of actual pure substance of 1,755 grams; and 2) Exhibit 2 was found to be methamphetamine HCl with a weight of actual pure substance of 439 grams.

(Mem. of Plea Agreement at ¶ 8, ECF No. 80).

The Plea Agreement contained a waiver of Petitioner Rosa's right to appeal and collaterally attack his conviction subject to certain exceptions. (Mem. of Plea Agreement, at ¶ 12, ECF No. 80).

The Court entered an order accepting Petitioner's guilty plea and adjudged him guilty as to Count 1 of the Indictment. (ECF No. 87).

## Petitioner's Final Presentence Investigation Report

On May 2, 2017, the probation officer filed Petitioner's Final Presentence Investigation Report. (ECF No. 99).

The probation officer concluded that Petitioner was responsible for 2.217 kilograms of "ice" which placed his base offense level at level 36. (Id. at ¶ 31).

The probation officer found that Petitioner's base offense level should be increased by two points for being the organizer

or leader of the charged activity.  (Id. at ¶ 34).

Petitioner received a two-point reduction for acceptance of responsibility.  (Id. at ¶ 38).

Petitioner received a one-point reduction for timely notifying authorities of his intention to plead guilty.  (Id. at ¶ 39).

The Final Presentence Investigation Report calculated Petitioner's Sentencing Guidelines to be a total offense level of 35 with a criminal history category of VI for a recommended sentence of 292 to 365 months imprisonment.  (PSR at ¶ 83, ECF No. 99).

**Petitioner's Sentencing Proceeding**

On May 25, 2017, the sentencing hearing was held before the District Court Judge.  (ECF No. 111).  Petitioner Rosa was represented by Attorney Barbee at the hearing.  Attorney Barbee objected to the upward adjustment in the sentencing guidelines based on Petitioner Rosa's role in the offense as a leader or organizer.

The District Judge denied Attorney Barbee's objections and adopted the factual statements contained in the PSR.  The District Judge adopted the Presentence Investigation Report's findings of a total offense level of 35 and criminal history category VI for a recommended sentencing range of 292 to 365

7

months imprisonment.

The District Judge sentenced Petitioner Rosa to a sentence of 188 months imprisonment, more than 100 months below the guideline range.

The District Judge advised Petitioner Rosa about his right to appeal, as follows:

> Now, in your plea agreement you have waived some of your rights to appeal; but if you feel that you have just reason to appeal, you can present that argument to the appellate court. Your right to appeal is within 14 days of judgment being entered in your case, and it is a waiver of your right to appeal if you do not file within that period of time.
>
> (Transcript of Sentence at p. 21, ECF No. 126).

The Court granted the Government's oral motion to dismiss Count 2 of the Indictment.

The Judgment was filed on May 30, 2017. (ECF No. 115).

Petitioner did not file a direct appeal.

**Petitioner's Section 2255 Motion**

A year later, on June 8, 2018, Petitioner Rosa filed a MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE, pursuant to 28 U.S.C. § 2255. (ECF No. 130).

Petitioner Rosa challenges his conviction on the basis that Attorney Barbee provided ineffective assistance of counsel.

On June 14, 2018, the Government filed a Request for Order Finding Waiver of Attorney-Client Privilege with Respect to

Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (ECF No. 132).

On the same date, the Court issued an ORDER FINDING WAIVER OF ATTORNEY-CLIENT PRIVILEGE WITH RESPECT TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY.  (ECF No. 133).

On July 11, 2018, the Government requested additional time to respond to Petitioner's Section 2255 Motion.  (ECF No. 134).

On July 12, 2018, the Court granted the Government's request for additional time.  (ECF No. 135).

On September 10, 2018, the Government filed its RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY.  (ECF No. 137).

On September 26, 2018, Petitioner filed his REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION UNDER 28 U.S.C. § 2255.  (ECF No. 138).

The Court elected to hold an evidentiary hearing.  (ECF No. 139).

On February 13, 2019, the Court held an evidentiary hearing.  (ECF No. 143).

On February 20, 2019, the Petitioner filed his POST-HEARING SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION PURSUANT TO 28 U.S.C. § 2255.  (ECF No. 146).

On the same day, the Government filed its POST-EVIDENTIARY HEARING ARGUMENT. (ECF No. 147).

## **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2255, provides federal prisoners with a right of action to challenge a sentence if:

(1) the sentence was imposed in violation of the Constitution or laws of the United States;

(2) the court was without jurisdiction to impose such a sentence;

(3) the sentence was in excess of the maximum authorized by law;

(4) or the sentence is otherwise subject to collateral attack.

28 U.S.C. § 2255(a).

A prisoner may file a motion to vacate, set aside, or correct a sentence. 28 U.S.C. § 2255. The scope of collateral attack of a sentence is limited, and does not encompass all claimed errors in conviction and sentencing.

A district court must hold an evidentiary hearing to assess the worthiness of a Section 2255 Motion unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. 28 U.S.C. § 2255(b).

The District Court must hold an evidentiary hearing in situations where a petitioner alleges ineffective assistance of

counsel based on an attorney's failure to follow the petitioner's request to appeal.  United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir. 2005); see Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000).  An evidentiary hearing is also required when there are questions as to whether the attorney properly consulted with the petitioner as to his right to appeal and whether the attorney had a duty to consult with the petitioner regarding the filing of an appeal.  Roe, 528 U.S. at 480.

## ANALYSIS

A prisoner who alleges ineffective assistance of counsel in a Section 2255 Motion must satisfy the two-part test of ineffective assistance set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 687 (1984).

First, the petitioner must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution.  Id.

Second, the petitioner must show that the counsel's deficient performance was prejudicial.  This requires showing that counsel's errors were so serious as to deprive the prisoner of a fair trial or fair representation.  Id.  The petitioner must show that there is a reasonable probability that but for

counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694.

Here, Petitioner argues that he received ineffective assistance of counsel at two separate points during the proceedings.

First, Petitioner Rosa argues that he received ineffective assistance of counsel from Attorney Barbee because he allegedly did not inform Petitioner about the application of the sentencing guidelines and the possible sentence he might face before he entered his guilty plea before the Magistrate Judge.

Second, Petitioner Rosa argues that he received ineffective assistance of counsel from Attorney Barbee because he was not properly informed about his right to appeal following sentencing.

Both of Petitioner's claims fail. The record and testimony at the evidentiary hearing conclusively demonstrate that Petitioner did not receive ineffective assistance of counsel.

Both Attorney Barbee and the United States Magistrate Judge properly informed Petitioner of the application of the sentencing guidelines and the possible sentence he was facing before Petitioner pled guilty.

Petitioner was also properly informed of his right to appeal. Attorney Barbee consulted with Petitioner about the effect of the waiver in his plea agreement following sentencing and advised him that he had waived the right to appeal a sentence

below the sentencing guidelines.  Attorney Barbee did not provide ineffective assistance of counsel.

There is no support in the record for Petitioner's claim that he received ineffective assistance of counsel.  The Court did not find Petitioner's testimony at the evidence hearing to be credible.  The Court finds that Attorney Barbee provided credible testimony and properly represented Petitioner in the underlying proceedings.

## I.   Petitioner's Ineffective Assistance Of Counsel Claim Regarding His Guilty Plea Before The Magistrate Judge

The United States Supreme Court has held that the two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel.  Hill v. Lockhart, 474 U.S. 52, 57 (1985).  The petitioner must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that, but for counsel's errors, the defendant would not have accepted the plea agreement.  Id. at 56-59.

A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea.  The petitioner must show that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  Hill, 474 U.S. at 56-57 (quoting Tollet v. Henderson, 441 U.S. 258, 267 (1973)).

The second prong, prejudice, focuses on whether a counsel's constitutionally ineffective performance affected the outcome of the plea process.  <u>Id.</u> at 58-59.  The petitioner must show that there is a reasonable probability that, but for a counsel's errors he would not have pleaded guilty and would have insisted on going to trial.  <u>Id.</u>

**A.    The Plea Agreement And The Magistrate Judge Advised Petitioner Of The Applicability Of The Sentencing Guidelines And The Mandatory Minimum And Maximum Sentences That Applied To His Case**

The written plea agreement and the plea colloquy before the United States Magistrate Judge reflects that, contrary to Petitioner's claim, he was fully informed of his possible sentence and the applicability of the Sentencing Guidelines before he entered into the guilty plea.

**1.    The Written Plea Agreement Informed Petitioner About The Applicability Of The Sentencing Guidelines And The Statutory Sentencing Range**

The written Memorandum of Plea Agreement informed Petitioner of the applicability of the Sentencing Guidelines and the potential sentence he could face for pleading guilty.  In Paragraph 7, the agreement specifically states:

7.    Defendant understands that the penalties for the offense to which he is pleading guilty include:

a.    Not less than 10 years and up to life

14

imprisonment, a fine of up to $10,000,000, plus a term of supervised release of not less than five years.

b.     At the discretion of the Court, defendant may also be denied any or all federal benefits, as that term is defined in 21 U.S.C. § 862, (a) for up to five years if this is defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances. If this is defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in 21 U.S.C. § 862(d).

c.     In addition, the Court must impose a $100 special assessment as to each count to which the Defendant is pleading guilty. Defendant agrees to pay $100 for each court to which he is pleading guilty to the District Court Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

In paragraph 13 of the Plea Agreement:

13.     The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines. The Defendant agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof, notwithstanding any representations or predictions from any source.

(Memorandum of Plea Agreement at pp. 3-4, 7-8, ECF No. 80).

**2.    The Magistrate Judge Informed Petitioner About The Applicability Of The Sentencing Guidelines And The Statutory Sentencing Range**

The Magistrate Judge carefully reviewed the Plea Agreement with Petitioner Rosa to ensure that he fully understood its terms.  (Change of Plea Tr. at 5-10, ECF No. 125).  The Magistrate Judge conducted a colloquy as follows:

Magistrate Judge:    Mr. Rosa, have you received a copy of the indictment pending against you?  That's the written charges in the case?

Petitioner Rosa:    Yes.

Magistrate Judge:    Have you fully discussed those charges and all the facts surrounding them with your attorney?

Petitioner Rosa:    Yes.

Magistrate Judge:    You understand everything your attorney has told you about your case and about the consequences of pleading guilty?

Petitioner Rosa:    Yes.

Magistrate Judge:    Are you fully satisfied with the legal representation you have received from Mr. Barbee?

Petitioner Rosa:    Yes.

Magistrate Judge:    Okay.  And, Mr. Barbee, are you and your client in agreement as to your client's decision to plead guilty?

Mr. Barbee:    Yes, Your Honor, we are.

(Id. at p. 5).

The Magistrate Judge went over the process of entering into the plea agreement with the Petitioner:

Magistrate Judge:    Okay.  The court has been furnished with a written plea agreement.  It is 13 pages long.  I'm going to hold this up as well, Mr. Rosa.  Is that your signature on the last page?

Petitioner Rosa:    Yes.

Magistrate Judge:    Okay.  Did you have an opportunity to read through this whole document?

Petitioner Rosa:    Yes.

Magistrate Judge:    Okay.  Did you have an opportunity to discuss all of it with your lawyer?

Petitioner Rosa:    Yes.

Magistrate Judge:    You understand the terms of the agreement?

Petitioner Rosa:    Yes.

Magistrate Judge:    Does this agreement cover every aspect of the agreement you have with the government?

Petitioner Rosa:    Yes.

Magistrate Judge:    Has anyone made any other promises in an effort to get you to plead guilty?

Petitioner Rosa:    No.

Magistrate Judge:    Okay.  Has anyone attempted to force you to plead guilty or to pressure you in any way?

Petitioner Rosa:    No.

(Id. at pp. 5-6).

The Magistrate Judge informed Petitioner that he faced a term of "not less than ten years and up to life imprisonment" if he pleaded guilty. (Id. at 7-10).

The record conclusively demonstrates that the Magistrate Judge inquired with Petitioner if he was satisfied with the representation he was provided by Attorney Barbee, if Petitioner understood the terms of the Plea Agreement, and if he understood the minimum and maximum sentences that were applicable to his case.

Petitioner testified that he was satisfied with his representation and understood the terms of the Plea Agreement. (Id. at 8-9). Petitioner Rosa stated that he understood the possible penalties he would face for pleading guilty. (Id.)

The Magistrate Judge informed Petitioner Rosa about the applicability of the Sentencing Guidelines and that his sentence could differ from estimates that were provided to him by his attorney. (Id. at 11-12). The Magistrate Judge informed Petitioner that, based on his guilty plea, he could receive the maximum sentence permitted. (Id. at 12-13). The Magistrate Judge asked Petitioner if he understood that he was charged with a violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A), and 21 U.S.C. § 846 which carries a mandatory minimum sentence of ten (10) years and up to life imprisonment. (Id. at 8-9).

Petitioner Rosa stated that he understood and acknowledged that he spoke with his attorney about the Sentencing Guidelines and understood how they might apply in his case.  (Id.)

The colloquy continued, as follows:

Magistrate Judge: You understand that the Court will not be able to determine the guidelines for your case until after a presentence report has been prepared and you and the government have each had an opportunity to read it and object to anything in it you don't agree with?

Petitioner Rosa: Yes.

Magistrate Judge: Do you also understand that after it has been determined what guidelines apply to your case, the Court will consider the guidelines and other factors required by law, and the Court may impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

Petitioner Rosa: Yes.

Magistrate Judge: You understand that if the sentence is worse than you expect, you will still be bound by your plea and have no right to withdraw it?

Petitioner Rosa: Yes.

Magistrate Judge: You understand that the sentence imposed may be different from any estimate your attorney has given you?

Petitioner Rosa: Yes.

Magistrate Judge: You understand that any recommendation of a sentence agreed to by your attorney and the

> government or any agreement not to oppose your attorney's requested sentence is not binding upon the Court, and you might, on the basis of your guilty plea, receive up to the maximum sentence permitted?

Petitioner Rosa:    Yes.

Magistrate Judge:   Has anyone made any promise to you as to what your sentence will be?

Petitioner Rosa:    No.

(Id. at pp. 12-13).

The record is clear that the Magistrate Judge ensured that Petitioner Rosa provided a knowing and voluntary guilty plea.

Petitioner's claims of ineffective assistance of counsel, with respect to the guilty plea, fail. The Magistrate Judge specifically advised Petitioner that the sentence imposed could be different from any estimate given to him by his attorney. Petitioner acknowledged that he understood. Petitioner stated that no one had made any promises as to what his sentence might be.

In light of these facts, Petitioner cannot now claim that he did not understand the terms of his plea, the applicability of the sentencing guidelines, the statutory minimum and maximums that applied, or that his counsel failed to properly advise him about such information.

**B. Attorney Barbee Properly Informed Petitioner About The Applicability Of The Sentencing Guidelines And The Statutory Sentencing Range Prior To His Guilty Plea**

Attorney Barbee testified at the evidentiary hearing. At the hearing, Attorney Barbee adopted his prior Declaration made in support of the Government's Opposition to Petitioner's Section 2255 Motion. (Government's Resp. to Mot., Rustam A. Barbee Decl. at ¶ 6-10, ECF No. 137). Attorney Barbee's testimony at the evidentiary hearing was consistent with his prior Declaration and was also consistent with the record in this case.

Petitioner's claim that Attorney Barbee did not discuss the Sentencing Guidelines with him is not credible. His claim that Attorney Barbee misinformed him about his potential sentence is not credible.

Petitioner's testimony was implausible and inconsistent with the record. Attorney Barbee provided credible testimony at the evidentiary hearing that he went over the plea agreement with Petitioner in detail and never informed Petitioner that he would receive a sentence of less than ten years imprisonment.

Petitioner was advised by both the Court and Attorney Barbee on multiple occasions as to the applicability of the Sentencing Guidelines and the possible sentence he might receive before he entered his guilty plea.

### 1.    Petitioner Is Not Credible

Petitioner testified at the evidentiary hearing that he graduated from Hilo High School and earned eight hours of college credit while taking classes in math and welding.  Petitioner testified on cross-examination that he could read, write, and understand English.  Petitioner understood the nature of the proceedings before the Magistrate Judge when he entered his guilty plea.

Petitioner was provided with a copy of the Plea Agreement and entered into it prior to the hearing before the Magistrate Judge.  Petitioner signed the Plea Agreement himself.  Petitioner admitted during cross-examination that he had his own copy of the Plea Agreement for a number of days prior to his guilty plea. Petitioner's testimony, at the evidentiary hearing, that he did not read the Plea Agreement before signing it is not credible.

At the evidentiary hearing, Petitioner testified that Attorney Barbee personally met with him after he received his copy of the Plea Agreement.  But, Petitioner claims Attorney Barbee did not discuss the Plea Agreement with him, did not advise him of the maximum and minimum sentence applicable, and told him he would receive a sentence of ten years or less. Petitioner's testimony is not credible.

Attorney Barbee has extensive experience in criminal defense including serving as an Assistant Public Defender in the United

States District Court for the District of Hawaii. There was no basis to support the idea that Attorney Barbee would have told Petitioner that he would receive a sentence of less than 10 years imprisonment given Petitioner's prior criminal history and the amount of drugs involved in this case.

Petitioner testified before the Magistrate Judge that he was fully satisfied with the legal representation that he received from Attorney Barbee, that he understood that the charge to which he pled guilty carried a mandatory minimum sentence of ten years and a maximum of up to life imprisonment, and that Attorney Barbee had spoken with him about the Sentencing Guidelines and how they might apply to his case.

Petitioner Rosa now claims that he lied to the Magistrate Judge. Petitioner's testimony at the evidentiary hearing is implausible. Petitioner is not credible.

### 2. Attorney Barbee Is Credible

Attorney Barbee testified that after he received the discovery from the Government, he calculated an estimate of what he believed Petitioner Rosa's Sentencing Guidelines might be, given the amount of drugs involved, and Petitioner's prior criminal history. Attorney Barbee testified that he informed Petitioner that he believed Petitioner was facing a Sentencing Guideline range of between 324 and 405 month confinement if he

23

lost at trial.  He provided documentary evidence of his notes in
support of his testimony.  (Notes from the case file of Rustam A.
Barbee, Government's Exhibit 5).

Attorney Barbee testified that he negotiated a Plea
Agreement on Petitioner's behalf and that he met with Petitioner
after providing him with the proposed written Plea Agreement.
Attorney Barbee stated that he met with Petitioner in-person and
covered every paragraph of the Plea Agreement with Petitioner
Rosa to ensure that he understood it.

Attorney Barbee testified that he never told Petitioner that
he would receive a sentence of ten years or less than ten years
imprisonment.  Attorney Barbee explained that such a sentence
would not have been possible given the mandatory minimum in this
case, the amount of drugs involved, and Petitioner's prior
criminal history.  Petitioner was in criminal history category VI
at the time of sentencing.

The Court finds Attorney Barbee testified credibly and his
testimony is given substantial weight.  Attorney Barbee's
representation of Petitioner Rosa was not deficient.

## II.  Petitioner's Ineffective Assistance Of Counsel Claim
##      Regarding His Right To Appeal

In Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000), the
United States Supreme Court held that the two-part Strickland
test applies to claims that counsel was constitutionally

ineffective for failing to file a notice of appeal.

The Supreme Court explained that counsel has a duty to consult with the defendant regarding an appeal when there is reason to think that either:

(1)  a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or;

(2)  this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Id. at 480.

A highly relevant factor is whether the conviction follows a trial or guilty plea, and whether the defendant waived his appellate rights.  Id.  If the first Strickland prong is met, the defendant must demonstrate that there is also a reasonable probability that but for counsel's deficient failure to consult with him about his appeal, he would have timely appealed.  Id. at 484.

Petitioner entered into a written Memorandum of Plea Agreement that waived most of Petitioner's appellate rights.  The written Memorandum of Plea Agreement specifically states:

12.  The Defendant is aware that he has the right to appeal his conviction and the sentence imposed. Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, both his conviction and any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

a.  The Defendant also waives his right to

challenge his conviction or sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except that Defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

b. If the Court imposes a sentence greater than specified in the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of her sentence in a collateral attack.

(Memorandum of Plea Agreement at pp. 6-7, ECF No. 80).

At the sentencing hearing, the District Court Judge informed Petitioner of his appellate rights along with the waiver provided in his plea agreement.

The District Judge stated:

Now, in your plea agreement you have waived some of your rights to appeal; but if you feel that you have just reason to appeal, you can present that argument to the appellate court. Your right to appeal is within 14 days of judgment being entered in your case, and it is a waiver of your right to appeal if you do not file within that period of time.

(Transcript of Sentence at p. 21, ECF No. 126).

After sentencing, Attorney Barbee consulted with Petitioner about his appellate rights following his sentence that was more

than 100 months below the sentencing guidelines. (Declaration of Rustam Barbee at ¶¶ 16, 20, ECF No. 137-1).

Attorney Barbee testified that he explained to Petitioner, "Judge Gillmor just told you you had 14 days to appeal your sentence, you'll recall that you have waived your right to appeal except for limited circumstances, and your sentence is below the guideline range, not above it. So effectively, through the plea agreement, you have waived your right to appeal." (Evidentiary Hearing Transcript at p. 80, ECF No. 148). Petitioner Rosa did not affirmatively ask Attorney Barbee to file a Notice of Appeal on his behalf. (Id. at pp. 12-13). Rather, Petitioner agrees that Attorney Barbee told him that he had effectively waived his right to appeal. (Id.)

There was no ineffective assistance of counsel by Attorney Barbee. The Ninth Circuit Court of Appeals has explained that where a defendant waived his right to appeal in a plea agreement and did not affirmatively ask his counsel to file a notice of appeal, the failure to file that notice is not deficient. United States v. Sandoval-Lopez, 409 F.3d 1193, 1196 (9th Cir. 2005). The appellate court explained, as follows:

> In the hypothetical scenario where [the defendant] never expressed any desire to appeal, Flores-Ortega would completely foreclose an ineffective assistance of counsel claim. In such a scenario, because there was no ground for appeal, as an appeal had been waived, and he had obtained the benefit of his very favorable plea bargain, no rational defendant would want to appeal. So [defendant's] lawyer's failure to file a notice of

appeal would not be deficient performance, if he and his client did not consult about an appeal.

Id.

Here, Attorney Barbee did consult with Petitioner about his right to appeal following sentencing. He explained that there was no basis for an appeal given the extremely favorable sentence that was more than 100 months below the recommended sentencing guidelines. No rational defendant would want to appeal such a sentence. Sandoval-Lopez, 409 F.3d at 1196.

There was no deficient performance by Attorney Barbee for failure to file a notice of appeal under the circumstances. Domanquera v. United States, 04-cr-00061 JMS-02, 2007 WL 461307, *4 (D. Haw. Feb. 7, 2007); United States v. Martinez, 2018 WL 5920782, *9-*10 (E.D. Cal. Nov. 13, 2018) (finding that the petitioner failed to establish his counsel was deficient where he was advised by counsel that any appeal would be frivolous given his appellate waiver and the petitioner never expressly requested that his counsel file a notice of appeal).

Petitioner Rosa received the benefit of his plea agreement and received a sentence more than 100 months below the low-end of the Sentencing Guidelines recommendation. Petitioner's claim that he would have timely appealed his sentence despite his favorable sentence is not credible.

Petitioner was properly informed of his appellate rights and Attorney Barbee was not deficient in failing to file a notice of

appeal.

### III. Petitioner Is Not Entitled To A Certificate Of Appealability

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996 provides that a Certificate of Appealability may be issued in a habeas corpus proceeding "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

A "substantial" showing requires a prisoner to show that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

Petitioner Rosa's Section 2255 Motion has not made a substantial showing that Petitioner was deprived of a constitutional right. Petitioner's arguments are not supported by the record and applicable law. Reasonable jurists would not debate the Court's conclusion, and there is no reason to encourage further proceedings.

A Certificate of Appealability is **DENIED.**

//

//

//

//

**CONCLUSION**

Petitioner Rosa's Motion to Vacate, Set Aside or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 130) is **DENIED.**

A Certificate of Appealability is **DENIED.**

IT IS SO ORDERED.

DATED: April 10, 2019, Honolulu, Hawaii.



Helen Gillmor
United States District Judge